O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANU D., <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, Acting Commissioner of Social Security, <br><br> Defendant. | Case No. 5:23-cv-01279-KES <br><br> MEMORANDUM OPINION AND ORDER |

**I.**

**INTRODUCTION**

On June 30, 2023, Plaintiff Anu D. ("Plaintiff") filed a Complaint for review of denial of social security disability benefits. (Dkt. 1.) Plaintiff filed Plaintiff's Brief ("PB") under Rule 6 of the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g). (Dkt. 14.) Defendant filed a responding Commissioner's Brief ("CB") under Rule 7. (Dkt. 15.) Plaintiff filed a timely Reply ("PRB"). (Dkt. 17.)

For the reasons stated below, the Commissioner's decision denying benefits is AFFIRMED.

## II.

## PROCEDURAL BACKGROUND

In January 2020, Plaintiff applied for Title II Disability Insurance Benefits ("DIB") alleging disability that prevented her from working as a dentist as of August 1, 2014.[1] Administrative Record ("AR") 247. On May 18, 2021, an Administrative Law Judge ("ALJ") conducted a telephonic hearing at which Plaintiff, who was represented by counsel, testified along with a vocational expert ("VE"). AR 38-64. On July 14, 2022, the ALJ conducted a supplemental telephonic hearing. AR 65-94. On October 5, 2022, the ALJ issued an unfavorable decision. AR 8-32.

The ALJ found that Plaintiff suffered from the following severe, medically determinable impairments ("MDIs"):

> [S]eronegative rheumatoid, arthritis; fibromyalgia syndrome; irritable bowel syndrome ["IBS"]; polyarthralgia and polytendonitis; spondylitis of the cervical spine with radiculopathy to the shoulders; spondylitis of the lumbar spine with radiculopathy to the legs; generalized anxiety disorder; and depressive disorder.

AR 14. After considering the limiting effects of Plaintiff's MDIs, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work with additional limitations on postural activities. AR 16. To account for limitations caused by Plaintiff's mental MDIs, the ALJ limited her to work consisting of "simple, repetitive tasks" with "occasional contact with the general public." AR 16.

Based on these RFC findings and the VE's testimony, the ALJ found that

---

[1] Plaintiff immigrated from India in 1995 at age 22. She worked as a dentist from 2004 to 2017 when she sold her practice. AR 967. She stopped working on patients in 2014 but did not close her practice until 2017 because other dentists were managing patient care. AR 56-57, 71.

Plaintiff could no longer do her past relevant work as a dentist.  AR 23.  Plaintiff could, however, work as an office helper, parking lot attendant, and housekeeping cleaner.  AR 25.  The ALJ concluded that Plaintiff was not disabled from August 1, 2014, through the date of his October 2022 decision.  AR 25.

## III.
## ISSUES

<u>Issue One</u>:  Whether the ALJ erred in considering the findings of State agency psychological consultant Joseph Cools, Ph.D.  (PB at 2.[2])

<u>Issue Two</u>:  Whether the ALJ erred in considering the findings of psychological consultative examiner ("CE") Cyrus Riahi, Ph.D.  (PB at 2, 7.)

<u>Issue Three</u>:  Whether the ALJ's RFC findings are supported by substantial evidence.  (PB at 2, 10.)

## IV.
## DISCUSSION

**A.  <u>ISSUE ONE: Dr. Cools.</u>**

**1. The ALJ's Treatment of Dr. Cools's Opinions and Other Mental Health Evidence.**

At the reconsideration level on October 1, 2020, State agency psychological consultant Dr. Cools found that Plaintiff was "moderately limited" in her abilities to interact appropriately with the general public, maintain socially appropriate behavior, and adhere to basic standards of neatness and cleanliness.  AR 129.  Dr. Cools further explained that Plaintiff could "relate effectively to co-workers and supervisors with brief, superficial and infrequent contact," but "[c]loser contact would be predicted to cause [Plaintiff] to withdraw."  <u>Id.</u>  He found that Plaintiff "would do best with very limited contact with the general public."  <u>Id.</u>

---

[2] Citations to the parties' briefs refer to the pagination imposed by the Court's electronic filing system.

3

The ALJ found Dr. Cools's opinions "partially persuasive." AR 22. The ALJ found his opinions related to exertional demands, task complexity, and limitations on encountering the general public persuasive as "well-reasoned, supported by the medical evidence of record as a whole, [and] substantively consistent with the other opinions." AR 22. The ALJ found his opinions about postural limitations unpersuasive because they were "insufficiently restrictive in light of the testimony, medical evidence, and postural findings in Exhibit 26F [an internal medicine consultative examination at AR1379-89]." AR 22.

The AR contains two earlier medical opinions addressing Plaintiff's ability to interact with others. First, in June 2020, CE Dr. Riahi opined that Plaintiff's ability to interact with the public, coworkers, and supervisors was "not limited." AR 969. The ALJ found Dr. Riahi's opinions "generally persuasive." AR 23.

On initial determination in July 2020, State agency consultant Elizabeth Covey, Psy.D., found that Plaintiff had "mild" difficulties interacting with others. AR 106. Dr. Covey went on to find that Plaintiff had "no" social interaction limitations and was "not significantly limited" in her ability to work "in coordination with or in proximity to others." AR 111. The ALJ found Dr. Covey's opinions "partially persuasive." AR 22.

The AR also contains non-medical evidence about Plaintiff's ability to engage in social interactions. In March 2020, Plaintiff completed a Function Report. AR 314. She reported "inability to handle noise, like people talking, loud noise, music." AR 314. Most mornings she did "water exercises" in her own pool[3] and went out walking for 45 minutes. AR 49, 315. She could drive short distances, go out alone, do weekly shopping, and take her kids to and from school. AR 52, 315, 317. She spent time daily on social medial websites. AR 318. She took her son to some sporting event weekly where she would sometimes watch

---

[3] Other records refer to her doing "water therapy at gym." AR 477.

from the "benches" with other parents. AR 318. When asked if she had problems getting along with others, she wrote, "Does not apply." AR 320.

Plaintiff's adult daughter also completed a Function Report in March 2020.[4] AR 304. According to her daughter, Plaintiff could drive and go out alone. AR 307. Plaintiff picked up her younger "kids from school [a] few days of [the] week." AR 305. She went grocery shopping weekly. AR 307. She spent time with others via computer chats, but she did not "go out much for social gatherings as noise bothers her." AR 308. When asked if Plaintiff had problems getting along with others, her daughter also wrote, "Does not apply." AR 309.

As of June 2020, Plaintiff had not seen a mental health specialist but she received medication from her primary care physician. AR 967. About a month later in July 2020, Plaintiff complained of "unmanageable anxiety." AR 1038. She reported "severe" difficulty dealing with people she did not know and "moderate" difficulty getting along with people close to her.[5] AR 1039.

At the supplemental hearing in July 2022, Plaintiff testified that she had trouble getting along with others due to her mental health. AR 85. She gave as examples getting mad at her ex-husband, sometimes swearing at her mother, and once giving a CVS pharmacist a "hard time" when he told her to wait for a prescription. AR 85-86. Plaintiff also testified that her ex-husband, former

---

[4] In June 2020, Dr. Riahi wrote that Plaintiff had an 8-year-old son, 10-year-old twin daughters, and a 22-year-old son. AR 967. Plaintiff testified that her oldest child is a daughter. AR 46. In 2020, Plaintiff lived with her three younger children and her mother, while her oldest daughter attended college. AR 46.

[5] Plaintiff's anxiety symptoms changed over time. In December 2014, she scored "minimal anxiety" on the Beck Anxiety Scale. AR 520. In February 2015, she reported that Effexor (generic name: venlafaxine), a medication prescribed to treat social anxiety, was causing her to feel more anxious and she "prefers not to be on any medication." AR 477. In February 2021, Plaintiff reported, "Anxiety has been manageable." AR 1032.

5

mother-in-law, and sister-in-law all lived in her neighborhood and stopped by frequently to help out with the kids. AR 46, 83. Other friends helped her set up automatic bill payment. AR 53. She testified, "I do get a lot of help." AR 84. Once since her alleged onset date, she travelled to India because a family member had passed away. AR 58.

The ALJ found that Plaintiff had "moderate" limitations interacting with others. AR 15. The ALJ cited Plaintiff's own reports of paranoia but contrasted these with evidence that Plaintiff was cooperative at medical appointments, regularly interacted with family members, and was found by Dr. Riahi to be "unlimited" in the area of social interactions. AR 15. The ALJ ultimately made RFC findings that restrict Plaintiff to "occasional" public contact but impose no restrictions on her contact with coworkers and supervisors. In the context of DIB determinations, "occasionally" means up to one third of each work day. Leach v. Kijakazi, 70 F.4th 1251, 1258 (9th Cir. 2023). The ALJ explained this decision saying, "Since [Plaintiff] reported anxiety related to interacting with other people, especially people with whom she is unfamiliar, she can have no more than occasional contact with the general public." AR 22.

### 2. Analysis of Claimed Error.

Plaintiff contends that the ALJ failed to adopt all the portions of Dr. Cools's opinions that he found persuasive. First, although Dr. Cools opined that Plaintiff "would do best with very limited contact with the general public," the ALJ found that she could "have occasional contact with the general public." (PB at 5, citing AR 16, 129.) Plaintiff contends that the "commonsense" meaning of "very limited" is something less than one third of each workday. (PB at 5.) Second, Dr. Cools found that Plaintiff's ability to interact appropriately with supervisors and coworkers was predicated on "brief, superficial and infrequent contact." AR 129. Dr. Cools predicted that "closer contact" would cause Plaintiff to "withdraw." AR 129. Yet according to Plaintiff, the ALJ neither limited Plaintiff's contact with

6

coworkers and supervisors nor explained why he rejected this suggested restriction. (PB at 5.)

The ALJ adequately explained how he arrived at the disputed RFC findings and he cited supporting evidence. The ALJ found Dr. Riahi's report "generally persuasive" (AR 23) and specifically cited his opinion that Plaintiff's "ability to interact with others was considered to be unlimited." AR 15, citing AR 969. The ALJ cited other evidence (summarized above) showing that Plaintiff's ability to get along with others was no more than moderately impaired. AR 15. The ALJ nevertheless included a limitation against extensive public contact in response to Plaintiff's reported anxiety and paranoia about strangers. AR 22. Plaintiff has not demonstrated legal error.

**B. ISSUE TWO: Dr. Riahi.**

    **1. The ALJ's Treatment of Dr. Riahi's Opinions.**

On June 16, 2020, Plaintiff attended a mental evaluation conducted by CE Dr. Riahi. AR 966-70. As relevant here, Dr. Riahi opined that Plaintiff's "ability to respond to changes in a routing work setting" was "not limited." AR 969. He also opined, however, that her "ability to respond to work pressure in a usual work setting" was "significantly limited." AR 969. The ALJ found Dr. Riahi's report "generally persuasive" because it was "based on firsthand observation" and "consistent with [Plaintiff's] conservative psychiatric treatment, including no psychiatric hospitalizations." AR 23.

The ALJ, however, found Plaintiff only "mildly" limited in the area of

adapting and managing herself.[6] AR 16. The ALJ acknowledged Dr. Riahi's opinions but also cited evidence that Plaintiff could complete chores, run errands independently, dress appropriately when she went out, and maintain appropriate hygiene. The ALJ wrote, "The record did not reveal any issue in regulating emotions, setting realistic goals, making independent plans, or not being aware of hazards." AR 16. Indeed, Plaintiff was able to provide care for three young children, including driving them to school, driving them to sporting events, and helping them with homework. AR 15, 315, 318.

### 2. Analysis of Claimed Error.

Plaintiff contends that the ALJ failed to account for Dr. Riahi's opinion that Plaintiff was "significantly limited" in her ability to respond to work pressure in a usual work setting. (PB at 8, citing AR 969.) According to Plaintiff, the CE's use of the word "significantly" indicates that Plaintiff has either a "marked" or an "extreme" limitation in her ability to deal with typical workplace pressure. (PB at 8.) An "extreme" limitation is characterized by an individual's absolute inability to function in the respective area independently, appropriately, and effectively on a sustained basis; a "marked" limitation means that the claimant's ability to function independently, appropriately, and effectively in a particular area on a sustained

---

[6] Examples of appropriately adapting or managing oneself include "responding to demands; adapting to changes; managing [one's] psychologically based symptoms; distinguishing between acceptable and unacceptable work performance; setting realistic goals; making plans … independently of others; maintaining personal hygiene and attire appropriate to a work setting; and being aware of normal hazards and taking appropriate precautions." 20 C.F.R., Pt. 404, Appendix 1 of Supt. P, 12.00(E)(4). Responding appropriately to work pressure falls within this area of mental functioning.

8

basis is "seriously limited."[7]  See 20 C.F.R. § 404, Subpt. P, App. 1 § 12.00(F)(2)(d)-(e).

The ALJ adequately restricted Plaintiff against "usual" workplace pressures by limiting her to simple tasks with only occasional public contact. By ensuring that Plaintiff would not need to worry about complex details or dealing frequently with strangers, the ALJ reduced common stressors that can create workplace pressure. See Roberson v. Berryhill, No. CV 16-05455-KES, 2017 U.S. Dist. LEXIS 46934, at *10 (C.D. Cal. Mar. 29, 2017) (finding ALJ accounted for claimant's "marked" difficulty responding to usual workplace pressure "by restricting Plaintiff to work in a 'low stress' work environment where she can be inattentive 5-10% of the time, have less-than-constant contact with others, and only face details or complexities 'occasionally.'").

**C. ISSUE THREE: The ALJ's RFC Findings and IBS.**

Plaintiff contends that the ALJ's RFC findings fail to account for functional limitations caused by her IBS. (PB at 12.) Plaintiff contends that the ALJ should have accounted for these limitations by restricting her to work with readily available restrooms and/or work that allowed her to take unscheduled bathroom breaks or a higher-than-normal number of bathroom breaks. (PB at 13-14.)

**1. The ALJ's IBS-Related Findings.**

The ALJ found that Plaintiff's IBS was a "severe" MDI. AR 14. The ALJ discussed Plaintiff's IBS symptoms, as follows:

> Regarding [Plaintiff's] allegations of frequent bouts of diarrhea, the record reflects that [Plaintiff] was first noted to have chronic diarrhea

---

[7] In comparison, "mild" and "moderate" limitations indicate that the claimant's ability to function in a particular area independently, appropriately, and effectively on a sustained basis is "slightly limited" or "fair," respectively. See 20 C.F.R. § 404, Subpt. P, App. 1 § 12.00(F)(2)(c).

9

> from gastroenteritis and colitis [in March 2011[8]] (Exhibit 2F at p. 2 [AR 418]), and she worked for years thereafter. It was not until March 2017 that [Plaintiff] reported that diarrhea had recently worsened with three loose stools daily and occasionally fifteen bowel movements daily, although she denied abdominal pain. Medication was started (Exhibit 9F at pp. 16-18 [AR 892-94]). Since then, most often, [Plaintiff] typically denied having diarrhea. (See, e.g., Exhibits 28F at p. 6, [AR 1407] 30F at p. 6 [AR 1435][9]). When [Plaintiff] was hospitalized, [Plaintiff's IBS] was addressed by no more than a dairy free and gluten free diet (Exhibit 30F at p. 67 [AR 1496]). [Plaintiff] reported, in a form received in January 2021, not needing medication that addressed [IBS] (Exhibit 17E [AR 365]). The overall record reflects [IBS] that does not chronically interfere with [Plaintiff's] ability to function as she alleged. Yet, [IBS] could [Plaintiff's] overall stamina and modestly reduce the exertion she can expend, which will be addressed in the level of exertion allowed.

AR 19. To account for this reduced stamina, the ALJ found that Plaintiff could do a reduced range of light work. AR 16.

### 2. Analysis of Claimed Error.

First, Plaintiff contends that the ALJ "did not explain why he excluded easy

---

[8] While the ALJ cites this record from March 2011, others from 2014 state that Plaintiff had a "history of chronic diarrhea since her childhood in India." AR 538. She associated her diarrhea with "eating something wrong" and had been "eliminating foods" over the years to avoid it. AR 538.

[9] These are provider notes from April 26, 2022 and June 9, 2022. See also AR 521 (12/19/2014: "States [medications] have helped resolve GI issues, no more diarrhea"); AR 1155, 1309 (7/9/17: no diarrhea); AR 1112, 1211 (1/5/20: no diarrhea); AR 1057, 1059, 1062 (October, November, and December 2020: no diarrhea); AR 1054 (3/6/21: no diarrhea).

access to bathroom facilities from Plaintiff's RFC." (PB at 13.) Not so. The ALJ explained that after Plaintiff reported symptoms in 2013 and received medication, her symptoms improved to the point where she neither complained of chronic diarrhea nor took medication to manage it. AR 19. This is supported by the record. AR 538-52 (5/17/14: reporting symptoms, ordering testing, receiving medication); AR 521 (12/19/2014: reporting "no more diarrhea" after taking Tagamet, an antacid medication).

Plaintiff cites AR 1492 as showing that her IBS caused functional impairments because it caused her "to have numerous bowel movements per day." (PB at 13.) On June 6, 2022, Plaintiff was hospitalized with sepsis. AR 1450. She was given a variety of medications, including senna, a laxative. AR 1450-51. Part of her care plan was to monitor her bowel movements. AR 1453. On June 9, Plaintiff told the hospital staff that she had "problems with LBM [loose bowel movements] related to IBS," and that "diarrhea has been a normal occurrence for her." AR 1492. The nursing staff observed she had "3x watery stools" and encouraged Plaintiff to "increase fluid intake." AR 1492. Similar notes about avoiding "GI upset" on June 11 and 14, however, say nothing about further loose bowel movements. AR 1499, 1555. The fact that Plaintiff temporarily had watery stools while hospitalized for sepsis and receiving a laxative has no tendency to show that Plaintiff regularly needed a higher-than-normal number of bathroom breaks.

Second, Plaintiff contends that since the ALJ found her IBS was a "severe" MDI, the ALJ was required to accommodate it in his RFC findings. (PB at 12.) But the ALJ explained that he accounted for Plaintiff's IBS when determining the exertional demands of which Plaintiff remained capable. AR 19.

Third, Plaintiff argues that the ALJ's chosen accommodation is "illogical and counterintuitive" because there is no "evidence that would suggest that Plaintiff's chronic irritable bowel syndrome results in exertional limitations." (PB

11

at 13.) Plaintiff cites online information that IBS's most common symptoms are abdominal pain and changes in bowel movements. (PB at 12-13.) But it is not illogical that belly pain and difficulty eating nourishing meals would reduce one's strength. Indeed, in May 2014, when 5'5" Plaintiff sought treatment for diarrhea, her weight had dipped to 98 pounds, apparently due to her trying to avoid symptoms she believed were triggered by eating the wrong foods.[10] AR 540-41.

In sum, none of Plaintiff's arguments demonstrate legal error in the ALJ's consideration of Plaintiff's IBS.

## V.
## CONCLUSION

For the reasons stated above, IT IS ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits.

DATED: November 15, 2023

                                        *Karen E. Scott*
                                        KAREN E. SCOTT
                                        United States Magistrate Judge

---

[10] By March 2017, she weighed a healthier 148 pounds. AR 893.